CRAIG J. ACKERMANN (Bar No. 229832)
  cja@laborgators.com
DEVIN COYLE (Bar No. 267194)
  devin@laborgators.com
**ACKERMANN & TILAJEF, P.C.**
1180 South Beverly Drive, Suite 610
Los Angeles, CA  90035
Telephone: (310) 277-0614
Facsimile: (310) 277-0635

MICHAEL MALK, ESQ., APC (Bar No. 222366)
  mm@malklawfirm.com
**MALK LAW FIRM**
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 203-0016
Facsimile:  (310) 499-5210

Attorneys for Plaintiff and the putative Class

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD NELSON, on behalf of himself and others similarly situated,<br><br>              Plaintiffs,<br><br>v.<br><br>DOLLAR TREE STORES, INC., and DOES 1-50, inclusive<br><br>              Defendants. | Case No. 2:11-CV-01334-JAM-CMK<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**<br><br>Judge: Hon. John A. Mendez<br>Date:   December 7, 2011<br>Time:  9:30 a.m.<br>Ctrm:  6 |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................. 3

II.   FACTUAL SUMMARY .................................................................................. 4

    A.   Claims ............................................................................................... 4

    B.   Procedural History ........................................................................... 4

    C.   Marshalling of Evidence ................................................................. 5

        1.   Declarations ........................................................................... 6

        2.   Documents ............................................................................. 6

        3.   Data ........................................................................................ 7

    D.   Settlement Negotiations .................................................................. 7

    E.   Summary of Settlement Terms ....................................................... 7

III.  RULE 23 CLASS CERTIFICATION REQUIREMENTS ARE MET ........... 8

    A.   Rule 23(a)(1) Numerosity ............................................................... 8

    B.   Rule 23(a)(2) Commonality ............................................................ 9

    C.   Rule 23(a)(3) Typicality ................................................................. 10

    D.   Rule 23(a)(4) Adequacy ................................................................. 11

    E.   Rule 23(b)(3) Predominance .......................................................... 11

    F.   Rule 23(b) Class Action is Superior .............................................. 12

IV.   PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ....... 13

    A.   Settlement Agreement is Within the Range of Possible Approval ...... 14

    B.   Settlement Was the Product of Informed, Non-Collusive Negotiations 17

    C.   Settlement Agreement Contains No Obvious Deficiencies ................. 17

        1.   The Settlement Agreement Does Not Grant Preferential Treatment to Segments of the Class ............................................. 17

        2.   The Settlement Agreement Does Not Grant Unduly Preferential Treatment to the Class Representative ......................................... 18

        3.   The Attorneys' Fees Under the Settlement Agreement Are Reasonable ............................................................................... 19

V.    APPROVAL OF CLASS NOTICE AND RELATED FORMS .................... 22

i

A.   Administration of Notice, Objections and Claims .................................22

B.   The Court Shall Direct Distribution of the Notice of Settlement .........23

C.   The Proposed Class Notice and Claims Process Are Appropriate .......23

D.   The Court Should Set A Final Approval Hearing.................................24

VI.   CONCLUSION.................................................................................................25

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

# TABLE OF AUTHORITIES

## **CASES**

*Amchem Prods. v. Windsor,*
    521 U.S. 591, 623 (1997) ...................................................................11

*Eddings v. Health Net, Inc.,*
    No. CV 10-1744-JST (RZx) (C.D. CA July 27, 2011) ...................10

*General Tel. Co. v. Falcon,*
    457 U.S. 147, 157-8, n. 13 (1982) ...................................................11

*Hanlon v. Chrysler Corporation,*
    150 F.3d, 1029-1120 (9th Cir. 1998)........................................passim

*Ikonen v. Hartz Mountain Corp.,*
    122 F.R.D. 258, 262 (S.D.Cal. 1988) .................................................9

*In re Bluetooth Headset Products Liability Litigation,*
    654 F.3d 935, 946 (9th Cir. 2011) ....................................................14

*In re Lorazepam & Clorazepate Antitrust Lit.,*
    202 F.R.D. 12, 29 (D.D.C. 2001) .....................................................12

*In re Tableware Antitrust Litig.,*
    484 F.Supp.2d 1078, 1079 (N.D.Cal. 2007)...............................13, 14

*Knight v. Red Door Salons, Inc.,*
    2009 WL 248367, *5 (N.D.Cal.) .......................................................21

*Lewis v. Starbucks Corp.,*
    2:07-cv-00490 (E.D.Cal. 2008) ...........................................15, 16, 20

*Martin v. FedEx Ground Package System, Inc.,*
    2008 WL 5478576, *8 (N.D.Cal.) .....................................................21

*Mendoza v. Tucson School Dist. No. 1,*
    623 F.2d 1338, 1351 (9th Cir. 1980) .................................................24

*Nguyen v. Baxter Healthcare Corporation,*
    No.: SAVC 10-01436-CJC (SSx) (S.D. CA August 26, 2011)........10

*Ortega v. J.B. Hunt Transport, Inc.,*
    258 F.R.D. 361, 367 (2009)...............................................................12

*Paul, Johnson, et al. v. Graulty,*
    886 F.2d 268 (9th Cir. 1989) .............................................................19

*Ramos v. SimplexGrinnell LP,*
    2011 WL 2471584 (E.D.N.Y. 2011) .................................................10

*Romero v. Producers Dairy Foods, Inc.,*
   2007 WL 3492841, *4 (E.D.Cal.) ...........................................................21

*Singer v. Becton Dickinson and Co.,*
   2010 WL 2196104, *8 (S.D.Cal.)...........................................................21

*Staton v. Boeing Co.,*
   327 F.3d 938, 976-77 (9th Cir. 1993)...........................................18

*Stuart v. RadioShack Corp.,*
   2010 WL 3155645, No. C-07-4499 EMC (N.D. Cal. Aug. 9, 2010)........14, 16

*U.S. v. Truckee-Carson Irrigation Dist.,*
   71 F.R.D. 10, 18 (D.Nev. 1975) ...........................................................23

*Vasquez v. Coast Valley Roofing, Inc.,*
   670 F.Supp.2d 1114 (E.D.Cal. 2009) ..........................................13, 14, 19, 21

*Vizcaino v. Microsoft Corp.,*
   290 F.3d 1043, 1048-50 (9th Cir. 2003) ...........................................19

*Wal-Mart Stores, Inc. v. Dukes, et al.,*
   131 S.Ct. 2541 (2011)...........................................................................9

## STATUTES

Cal. Bus. & Prof. Code §17200 ...........................................................4, 5, 9

Cal. Labor Code §203 ...........................................................................5, 6

Cal. Labor Code §2802 ...........................................................................4, 5, 8, 9

Fed. R. Civ. P. 23 ...........................................................................passim

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

**NOTICE IS HEREBY GIVEN** that, on Monday, December 7, 2011, at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6 of the United States District Court for the Eastern District of California before the Honorable Judge John A. Mendez, pursuant to Fed. R. Civ. P. 23(e), Plaintiff Richard Nelson ("Plaintiff") on behalf of himself and all others similarly situated, will and does hereby move this Court for entry of an Order:[1]

1.    Preliminarily certifying the class for purposes of settlement;

2.    Preliminarily appointing Plaintiff as Class Representative for purposes of settlement;

3.    Preliminarily appointing Craig J. Ackermann, Esq. of Ackermann & Tilajef, P.C. and Michael Malk, Esq. as Class Counsel for purposes of settlement;

4.    Preliminarily approving the settlement as fair, adequate, and reasonable, based upon the terms set forth in the parties' Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement"), including payment by Dollar Tree Stores, Inc. ("Dollar Tree" or "Defendant") of up to the Maximum Settlement Value ("MSV") of $200,000;

5.    Preliminarily approving an Incentive Award of $2,500 to Plaintiff in recognition of his service to the Settlement Class;

6.    Preliminarily approving Plaintiff's Counsel's request for up to 25% of the MSV as attorneys' fees, plus reimbursement of litigation costs up to $1,500;

7.    Appointing Simpluris, Inc., as the third-party Claims Administrator for mailing notices and for claims administration, approving that approximately $17,000 be deducted from the MSV for the costs of claims administration, and approving that the fees and costs of the claims administrator will be paid from the MSV; and

---

[1] The parties will submit a jointly-approved Proposed Order well in advance of the December 7 hearing date that is consistent with the terms of the Settlement Agreement.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

1    8.    Approving the proposed Class Notice and Claim Form, and ordering they

2    be disseminated to the class as provided in the Settlement Agreement.

3

4    Dated: November 4, 2011                     Respectfully submitted,
                                                  Ackermann & Tilajef, P.C.
5                                                 Michael Malk, Esq. APC
6

7
                                      By:    _____
8                                            Craig J. Ackermann, Esq.
9
                                      Attorneys for Plaintiffs and the Settlement Class
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

## I.  <u>INTRODUCTION</u>

Plaintiff Richard Nelson ("Plaintiff"), on behalf of himself and the putative Settlement Class,[2] requests that this Court preliminarily approve the parties' proposed Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement"),[3] entered into by Plaintiff and Dollar Tree Stores, Inc. ("Defendant" or "Dollar Tree") on November 1, 2011.

The Settlement Agreement seeks to fully release and discharge Defendant from the claims brought against it in the above-captioned matter (the "Lawsuit"). In exchange, Defendant will pay the Settlement Class up to $200,000 ("Maximum Settlement Value").

The Settlement Agreement and Notice distribution plan were the products of non-collusive, arm's-length negotiations by informed counsel and parties. The settlement is fair, reasonable and adequate to all. Accordingly, Plaintiff seeks: (1) preliminary approval of the Settlement Agreement; (2) provisional certification of the Settlement Class; (3) appointment of Plaintiff as Class Representative; (4) appointment of Ackermann & Tilajef, P.C. and Michael Malk, Esq. as Class Counsel; (5) approval of the parties' proposed form and method of notifying Class Members of the Settlement Agreement; (6) an order scheduling the hearing date for Final Approval of the Class Settlement; and (7) entry of a preliminary approval Order.[4]

---

[2] The proposed Settlement Class is defined as: All persons who work or worked for Defendant in the state of California in the position of Assistant Manager or Store Manager at any time from April 8, 2007 through the date of preliminary approval by the Court, except, to the extent waived, for those persons who have executed releases in favor of Defendant. In any instance of an employee who executed a release while still employed by Dollar Tree, that person shall be a Class Member only for a period of employment following the effective date of the release.

[3] The Settlement Agreement and the proposed Class Notice and Claim Form are attached as Exhibit 1 to the Declaration of Michael Malk ("Malk Decl.") filed herewith.

[4] Dollar Tree vigorously denies liability or wrongdoing with respect to its mileage (footnote continues on next page)

## II. <u>FACTUAL SUMMARY</u>

### A. Claims

Plaintiff alleges that Defendant failed to reimburse its Assistant Managers and Store Managers for the use of their personal vehicles for business-related purposes in violation of Cal. Labor Code §2802 and Cal. Bus. & Prof. Code §17200. Specifically, Plaintiff alleges that Assistant Managers and Store Managers made daily trips to the bank to deposit money, as required by Defendant, but were not reimbursed for gas or any of the other fixed and variable costs of operating their automobiles for business purposes. In addition, Plaintiff alleges that Defendant required Assistant Managers and Store Managers to occasionally use their personal vehicles for other business-related purposes, such as driving to the bank to get coins/change, attending sexual harassment trainings away from their base store(s), and/or transferring items from one store to another, e.g. plastic grocery bags – and likewise failed to reimburse them for driving expenses or provide any other form of compensation except regular hourly pay.

### B. Procedural History

On April 8, 2011, Plaintiff Richard Nelson filed his Original Class Action Complaint in the Superior Court of California, Butte County on behalf of himself and

---

reimbursement policies and practices. Dollar Tree reserves its right to assert any and all defenses to the claims asserted by Plaintiff and the putative class. Further, Dollar Tree joins in this motion to preliminarily approve of the settlement of a lawsuit that was filed as a class action but specifically denies that a settlement was necessary as a result of any action or inaction by Dollar Tree. Dollar Tree agrees to resolve the claims asserted by Plaintiff on a class basis to avoid incurring additional substantial costs beyond those which have already been incurred as well as the delay and risks that would be presented by further prosecution of the litigation. The proposed settlement includes a non-admissions clause and Dollar Tree has at all times maintained that its reimbursement policies and practices are fully lawful. Hence, Dollar Tree does not join the substance of the representations made by Plaintiff in this motion and specifically denies the negative characterizations of Dollar Tree's conduct as well as Plaintiff's interpretation of certain legal authorities. Dollar Tree therefore also reserves its right to clarify any aspect of the motion that it believes needs to be addressed.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

others similarly situated. On May 17, 2011, Defendant filed its notice of removal to federal court asserting jurisdiction under the Class Action Fairness Act (CAFA).[5]

By motion filed May 20, 2011, Defendant moved to dismiss and to strike portions of Plaintiff's Complaint. Plaintiff filed his opposition on June 15 and Defendant filed a reply on June 21. This Court heard Defendant's motion on June 29, 2011.

On July 22, 2011, the parties exchanged their initial disclosures pursuant to Rule 26(a)(1).

By order dated August 15, 2011, this Court granted Defendant's motion and dismissed with prejudice Plaintiff's claim for waiting time penalties under Cal. Labor Code §203, struck with prejudice certain remedy requests, and dismissed without prejudice Plaintiff's claims under Cal. Labor Code §2802 and Cal. Bus. & Prof. Code §17200 for mileage expense reimbursement.[6]

In compliance with the Court's order, Plaintiff filed a First Amended Complaint on September 2, 2011.

**C. Marshalling of Evidence**

Plaintiff's counsel have diligently pursued an investigation of the putative Class Members' claims, including: (1) interviews with putative Class Members; (2) review of

---

[5] The matter in controversy exceeded CAFA's jurisdictional minimum of $5,000,000, exclusive of interest and costs, largely on the basis of the penalties associated with Plaintiff's derivative claim for waiting time penalties pursuant to Cal. Labor Code §203. According to Defendant's calculations, the total waiting time penalties sought through Plaintiff's Original Complaint for both Store Managers and Assistant Managers was $4,796,071.

[6] The Court's order dismissing Plaintiff's §203 claims (and with them the vast majority of the amount in controversy) created a lot of momentum towards settlement. Moreover, the Court's Order shed light on the issue of what standard of liability would be applied to Plaintiff's §2802 claim – "strict liability" or "knew or should have known." The Court's Order implied, perhaps inadvertently, that the Court is sympathetic to a "knew" standard, thus giving Plaintiff reason to doubt that constructive knowledge would be sufficient, and giving him further incentive to accept an early settlement.

relevant documents, including but not limited documents demonstrating Defendant's expense reimbursement policies and procedures; (3) review of relevant data regarding the putative class; and (4) research with respect to the applicable law and the potential defenses thereto.

## 1. Declarations

Plaintiff's counsel interviewed and subsequently obtained sworn declarations from two Class Members who worked at Defendant's stores in San Jose and Sunnyvale, California. The experiences of these Class Members closely mirrored the experiences of Plaintiff while working at Defendant's store in Oroville, California, thus providing corroboration for the class-wide claims in Plaintiff's operative First Amended Complaint.

## 2. Documents

After Defendant's motion to strike had been fully briefed, and Plaintiff's counsel recognized the high probability that this Court would dismiss Plaintiff's §203 claims (and with them the vast majority of the amount in controversy), the parties began informal discovery in preparation for a settlement conference.  At a 2 to 3 hour meeting on August 10, 2011, Defendant provided documents and memoranda showing that Dollar Tree required its Assistant Managers and Store Managers to submit reimbursement requests.  At the same meeting, Plaintiff's counsel told Defendant's counsel what data and information they would need to put together a damages analysis and formulate a settlement demand.

On August 15, 2011, this Court granted Defendant's motion and, *inter alia,* dismissed with prejudice Plaintiff's §203 claim, thereby reducing the total amount in controversy from the $5,000,000 range to the $500,000 range.

On August 19, 2011, defense counsel sent an email to Plaintiff's Counsel with documents including (1) Defendant's policy that employees be reimbursed for properly-incurred business expenses (which was applicable to all Class Members during the Class Period), (2) efforts that Defendant has made to provide reimbursement for business

expenses to putative Class Members, e.g. numerous emails from Defendant to Assistant Managers and Store Managers encouraging them to submit reimbursement requests, and (3) evidence of reimbursement requests that were actually submitted by some Class Members and paid by Defendant, including requests for reimbursement for bank-related trips.

### 3.  Data

Defendant also supplied Plaintiff's Counsel with relevant information about the size of the class, the number of stores Defendant operates in California, the average distance between Defendant's stores and the banks where Class Members made deposits, and the average number of bank-related trips that were made per store, per day during the Class Period.

### D. Settlement Negotiations

On September 7, 2011, the parties attended an all-day settlement conference at the offices of defense counsel, Littler Mendelson. Attorneys Craig Ackermann and Devin Coyle, of Ackermann & Tilajef, P.C., and Michael Malk, of the Malk Law Firm, attended on behalf of Plaintiff. Attorneys Maureen McClain of Littler Mendelson and Dollar Tree's General Counsel, James A. Gorry, III, attended on behalf of Defendant.

After giving credit for the numerous reimbursements that Dollar Tree had actually paid to Class Members during the Class Period, Plaintiff calculated that the Class was owed approximately $500,000 in damages. After a full day of negotiations, the parties agreed to settle for $200,000 with a claims process and a maximum potential reversion of $25,000 to the company.

### E. Summary of Settlement Terms

Under the terms of the Settlement Agreement, Defendant is discharged of all claims asserted in the Lawsuit ("Released Claims")[7] in exchange for paying up to the

---

[7] The Released Claims include any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys fees, penalties, damages, restitution, (footnote continues on next page)

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

Maximum Settlement Value of $200,000. From that amount, and subject to court approval, will be subtracted Plaintiff's Incentive Award of up to $2,500, attorneys' fees to Plaintiff's Counsel of up to $50,000, Plaintiff's Counsel's actual costs of up to $1,500, and the Claims Administration Costs (estimated to be approximately $17,000). The remainder (approximately $129,000 depending on Claims Administration Costs) shall be available for distribution to Class Members who file timely and valid claims on a per work week basis. This is a claims made settlement with undistributed and unclaimed funds of up to $25,000 remaining with or reverting to Defendant if not needed to pay valid and timely claims, or if remaining after claims are paid. Any additional unneeded or unclaimed amounts above $25,000 shall be paid to a charity mutually selected by the Parties and approved by this Court.

## III.   RULE 23 CLASS CERTIFICATION REQUIREMENTS ARE MET

To determine the fairness of any settlement agreement calling for the creation of a settlement class, courts must decide whether the settlement class meets the requirements for class certification. *Hanlon v. Chrysler Corporation,* 150 F.3d, 1029-1120 (9th Cir. 1998). Here, the Settlement Class meets all of the requirements set forth in Fed. R. Civ. P. 23. Rule 23(a) sets our four prerequisites for certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Rule 23(b)(3) further provides that a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b).

### A. Rule 23(a)(1) Numerosity

Numerosity is easily satisfied because there are approximately 3,500 members in

---

injunctive relief, or a remedy of any other type which was stated or could have been stated in the Lawsuit related to or arising from any claimed violation of Cal. Labor Code §2802, whether alleged directly or based on some other statutory, regulatory, wage order or common law theory.

1  the Settlement Class.[8] *See, Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262

2  (S.D.Cal. 1988) (40 members enough).

3  **B. Rule 23(a)(2) Commonality**

4      The settlement class satisfies commonality in that all Class Members share, *inter*

5  *alia,* the following legal and factual questions: (1) whether Defendant violated California

6  Labor Code §2802 and Wage Order 7-2001 or other applicable IWC Wage Orders by

7  failing to reimburse Store Managers and Assistant Managers for out of pocket expenses

8  incurred through the use of their personal vehicles as a requirement of employment; (2)

9  whether Defendants violated §17200 et seq. of the California Business & Professions

10 Code by failing to reimburse Store Managers and Assistant Managers for out of pocket

11 expenses incurred through the use of their personal vehicles as a requirement of

12 employment; and (3) the nature and extent of Class-wide injury and the measure of

13 damages for the injury.[9]

14

15 [8] Ackermann Decl. ¶1, fn. 1.

16 [9] The reasoning of the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes, et al.,* 131 S.Ct.

17 2541 (2011) supports the conclusion that Plaintiff can make a sufficient showing of
   commonality under the facts and circumstances of this case. In *Dukes*, a huge and

18 sprawling nationwide Title VII class action brought under Rule 23(b)(2), the Court held
   that the plaintiffs had failed to establish commonality. *Dukes*, at 2555-56. Noting the

19 absence of an "express corporate policy" of discrimination and the fact that the
   challenged employment decisions were "generally committed to local managers' broad

20 discretion" *Id.*, the Court held that there was no "significant proof" to bridge the

21 "conceptual gap" between an individual's claim of injury and the existence of a class of
   persons who had suffered the same injury. *Id.* at 2552-54. The Court further noted that

22 the gap could be bridged by either common policies or by "significant proof that [the

23 employer] operated under a general policy of discrimination." *Id.* at 2553 (quoting

24 *General Tel. Co. v. Falcon*, 457 U.S. 147 (1982)).

25   In *Dukes*, there was a "policy" of allowing discretion by local supervisors over
   employment matters that, as the Supreme Court observed, "is a policy against having

26 uniform employment practices." *Id.* at 2554 (emphasis in original). Here, by contrast,

27 Dollar Tree's written policy was to reimburse employees for all mileage incurred in
   making bank deposits. However, in its application, this written policy failed to reimburse

28 (footnote continues on next page)

## C. Rule 23(a)(3) Typicality

"Under [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. Here, typicality is satisfied because the Plaintiff's claims are the same as the claims that could be brought by Class Members.[10] Plaintiff was a typical Assistant Manager, and as such was subject to the

---

store managers and assistant managers for *all* mileage expenses despite Dollar Tree's actual or constructive knowledge that these employees were routinely going to the bank to make deposits using their personal vehicles - particularly at the non-armored-car locations - and were not submitting reimbursement requests. This knowledge is reflected, *inter alia*, in the sign-out sheets that store managers and assistant managers are required to initial when taking Dollar Tree's deposits to the bank. These allegations constitute common policies or practices sufficient to justify class certification for settlement purposes. *See, Ramos v. SimplexGrinnell LP,* 2011 WL 2471584 (E.D.N.Y. 2011) (court certified a class of employees seeking unpaid wages. Specifically, the court found commonality under Rule 23(a)(2) because unlike *Dukes* the relevant payroll procedures were centralized, and thus *Dukes*, where the relevant decisions were left to the discretion of local managers, had little bearing); *Eddings v. Health Net, Inc.,* No. CV 10-1744-JST (RZx) (C.D. CA July 27, 2011) (court rejected defendant's motion to reconsider certification of class because the defendant subjected the class members to the same "timekeeping and rounding policies" and thus the legality of the rounding policies "satisfies Dukes and is proper for class-wide resolution"); *Nguyen v. Baxter Healthcare Corporation,* No.: SAVC 10-01436-CJC (SSx) (S.D. CA August 26, 2011) (In certifying a class alleging a violation of the California meal break law, the court determined that Baxter's uniform policies, unlike the discretionary policies in *Dukes*, provided a basis for satisfying the commonality requirement) (attached as Exhibits 1 and 2 to Plaintiff's Request for Judicial Notice, filed herewith). Given Dollar Tree's uniform practices and the significant proof of failure to reimburse for business-related expenses incurred by managers and assistant managers, the plaintiff has presented common questions "that will connect" the decisions regarding the pay of class members to the "claim for class relief." *Ellis v. Costco Wholesale Corporation,* __ F.3d ___, 2011 WL 4336668 at *7 (9th Cir. 2011); s*ee also, Stuart v. RadioShack Corp.,* N.D.Cal. 3:07-cv-4499-EMC Docket #65 (February 5, 2009) (certifying §2802 claims similar to those alleged here).

[10] Malk Decl. ¶19.

---

10

same policies and practices that gave rise to the claims of the Class.

**D. Rule 23(a)(4) Adequacy**

Rule 23(a)(4) permits certification of a class only if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts interpret this requirement to mean that (1) the proposed class representatives and their counsel do not have conflicts of interest with the proposed class; and (2) the plaintiff and their counsel vigorously prosecute the action on behalf of the class. *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff does not have interests adverse to those of the Settlement Class. Plaintiff was a typical Assistant Manager, and like the other Class Members was subject to all the alleged policies and practices that gave rise to the Lawsuit. Where, as here, the claims of the Class Members and the named Plaintiff are virtually coextensive, there is no conflict. *General Tel. Co. v. Falcon,* 457 U.S. 147, 157-8, n. 13 (1982). Additionally, Plaintiff understands the claims and theories that were alleged in the Lawsuit and has been involved at various stages throughout the litigation.[11] Likewise, Class Counsel has no conflicts of interest and have vigorously prosecuted the action on behalf of Plaintiff and the Settlement Class. Ackermann & Tilajef, P.C. and Michael Malk, Esq. APC, both separately and together, have significant experience litigating class actions and have been certified by numerous state and federal courts as competent and adequate class counsel.[12]

**E. Rule 23(b)(3) Predominance**

Predominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997). For common questions of law and fact to predominate, the issues that are subject to generalized proof should predominate over those subject to individualized proof. *Ortega*

---

[11] Ackermann Decl. ¶¶ 24-27.

[12] Ackermann Decl. ¶¶ 28-29, Exhibit B thereto; Malk Decl. ¶¶ 8-17.

*v. J.B. Hunt Transport, Inc.,* 258 F.R.D. 361, 367 (2009) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 280 F.3d 124, 136 (2d Cir. 2001)). Accordingly, courts must determine whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of individual class members. *See, e.g., In re Lorazepam & Clorazepate Antitrust Lit.,* 202 F.R.D. 12, 29 (D.D.C. 2001).

Here, a common nucleus of facts and issues predominates over individual issues because Plaintiff can establish all of his claims by focusing on Defendant's company-wide policies and practices that applied consistently and uniformly to all Class Members throughout the Class Period. Specifically, Plaintiff can rely on common proof that Defendant failed to develop or enforce any systematic company-wide mechanism to affirmatively reimburse Class Members for business-related expenses they incurred while using their personal vehicles for business purposes, including bank deposits, inter-store transfers, and attending sexual harassment trainings off-site, despite knowledge that Class Members were routinely incurring such expenses but only infrequently requesting reimbursement of them.[13]

### F. Rule 23(b) Class Action is Superior

To determine whether the class method is superior to other means of adjudicating the claims of many people, courts consider: (1) the interest of class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (4) the difficulties likely to be encountered in the management of a class action. *J.B. Hunt,* 258 F.R.D. at 370. Here, the superiority

---

[13] District Judge Chen of the United States District Court for the Northern District of California recently certified a class of retail store employees with respect to very similar §2802 claims in *Stuart v. RadioShack Corp.,* N.D.Cal. 3:07-cv-4499-EMC Docket #65 (class certification granted February 5, 2009); 2010 WL 3155645 (final approval of class action settlement granted August 9, 2010). *See,* Section IV(A), *supra.*

requirement is satisfied because it would be highly inefficient for 3,500 Class Members to file individual cases; certification will provide the Settlement Class with a viable method of obtaining redress for their relatively modest individual damages; and public policy supports the use of the class action device to secure the enforcement of statutes that focus on the workplace. *Hanlon,* 150 F.3d at 1023.

## IV.   PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Rule 23(e) states that a court may approve a class action settlement only if it finds the settlement fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(1)(A). The process by which the court makes this determination involves two steps: (1) there must be preliminary approval of the proposed settlement and of the Notice to be sent to class members, and (2) there must be a fairness hearing at which class members may be heard regarding the settlement and at which other evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is considered.

In connection with the first stage of the process, courts have determined that preliminary approval of the settlement and notice is appropriate if the proposed settlement: (1) falls within the range of possible approval, (2) appears to be the product of serious, informed and non-collusive negotiations, and (3) has no obvious deficiencies such as granting preferential treatment to segments of the class, granting unduly preferential treatment to the class representatives, or awarding unreasonable attorneys' fees. *See, Man. For Complex Lit.,* (3d ed.) §30.41; *Newberg on Class Actions,* (4th ed. 2002) §§ 11:24-25; *In re Tableware Antitrust Litig.,* 484 F.Supp.2d 1078, 1079 (N.D.Cal. 2007); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114 (E.D.Cal. 2009).[14]

---

[14] Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair. *In re Bluetooth Headset Products Liability Litigation,* 654 F.3d 935, 946-7 (9th (footnote continues on next page)

## A. Settlement Agreement is Within the Range of Possible Approval

To evaluate the "range of possible approval" criterion, which focuses on "substantive fairness and adequacy," courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer. *In re Tableware Antitrust Litig.,* 484 F.Supp.2d at 1080. If the settlement confers substantial benefit, while proceeding with litigation would impose significant risks, then the settlement falls within the range of approval. *Vasquez,* 670 F.Supp. at 1125.

In *Stuart v. RadioShack Corp.,* 2010 WL 3155645, No. C-07-4499 EMC (N.D. Cal. Aug. 9, 2010), for example, Judge Edward M. Chen approved a maximum $4.5 million settlement releasing defendant from its liability for its alleged failure to reimburse 15,000 assistant managers for the use of their personal vehicles to perform inter-company transfers.  At the time of preliminary approval, the parties' estimated that the average class member award would be about $198.[15] *See,* Case No. 3:07-cv-04499-

---

Cir. 2011). Courts must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations. *Id.* A few such signs are: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded," (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class," and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id.* (internal citations omitted).

 Here, the settlement agreement was negotiated at arm's-length and there are no signs of collusion. As discussed herein, the settlement's provision for attorneys' fees is proportionate to the class award, and the attorneys' fees sought are also appropriate when measured on a lodestar basis. Moreover, the settlement includes neither a "clear sailing agreement" nor a "kicker" provision that all fees not awarded to Plaintiff's counsel will revert to defendants rather than be made available for distribution to the class.

[15] Notably, the distances travelled by class members in *RadioShack* to perform inter-
(footnote continues on next page)

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

EMC, Docket #171.

In *Lewis v. Starbucks Corp.,* Case No. 2:07-cv-00490, Docket #57 (E.D.Cal. 2008) (final approval granted December 10, 2008), Judge Morrison C. England approved a maximum $3 million settlement between Starbucks and approximately 30,000 of its California shop managers, arising out of claims for reimbursement of travel expenses, specifically mileage for business errands performed by employees in their personal vehicles. At the time of preliminary approval, the parties' estimated that the average class member award would be $60. *See,* Case No. 2:07-cv-00490-MCE-DAD, Docket #39-1. Participating class members ultimately received gross payments between $36 and $110.[16]

Like the agreements in *RadioShack* and *Starbucks*, the Settlement Agreement in this case confers a substantial benefit on the Settlement Class.  Pursuant to the terms of the Settlement Agreement, Defendant will pay a Maximum Settlement Value of $200,000 in exchange for a full discharge of Plaintiff's and Participating Class Members' Released Claims. This amount is equivalent to approximately 40% of Plaintiff's revised assessment of the maximum value of the Released Claims.[17]  Once all the adequate deductions have been made from the Maximum Settlement Value, the amount available for distribution to Plaintiff and the Settlement Class is approximately

---

store transfers from one store location to another were far greater than those travelled by Dollar Tree employees to what was frequently the nearest local bank. Moreover, the *RadioShack* case settled on the eve of trial, i.e. after class certification and after years of discovery and trial preparation had been completed. The size of the class in *RadioShack* was also substantially larger than the size of the class in the instant case.

[16] *See, Lewis v. Starbucks Corp.,* Case No. 2:07-cv-00490, Docket #47 (E.D.Cal. 2008).

[17] Plaintiff's revised estimate of the maximum value of the released claims takes into account Defendant's plausible allegations that violation rates are significantly less than 100%. It also takes into account the fact that at least 42 stores were serviced by armored trucks, thus greatly reducing the number of bank-related trips required of Class Members at those stores.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

$131,000. Participating Class Members will receive on average, approximately $0.49 per week and the maximum amount that may be disbursed to any Claimant will be approximately $112.[18]

Moreover, this case resembles *RadioShack* and *Starbucks* in that pursuit of the Lawsuit through trial would impose significant risks on the outcome of Plaintiff's claims. First, briefing a motion for class certification and subsequently trying a class action case carry with them inherent risks, expenses and delays. Moreover, subsequent appellate proceedings, if any, would entail even greater risks, expenses and delays.

However, unlike *RadioShack,* where defendant's reimbursement policy was alleged to be illegal on its face (because short local trips were not reimbursable), Dollar Tree's reimbursement was not alleged to be illegal on its face but rather in its application, i.e. Dollar Tree allegedly failed to comply with its own policy prescribing reimbursement for business-related expenses. Furthermore, unlike *RadioShack* and *Starbucks,* where there was no evidence that class members had actually submitted reimbursement requests, Dollar Tree has provided Plaintiff's counsel with evidence that reimbursements were requested and paid on a significant number of occasions, though certainly not the majority of occasions when mileage expenses were incurred.

---

[18] The amount of work weeks in the Class Period worked by Class Members through September 1, 2011 (to be recalculated to the date of Preliminary Approval when known) is approximately 267,931 leading to a per work week payment of approximately .49 cents, which calculates to approximately $33 available to an Assistant Manager who worked 67 weeks in the Class Period (this is the approximate number of weeks worked in an Assistant Manager position during the Class Period through September 1, 2011) and $44 available to a Store Manager who worked 90 weeks in the Class Period (this is the approximate average number of weeks worked in a Store Manager position during the Class Period through September 1, 2011).  Assuming that the maximum number of weeks that any Participating Class Member could work during the Class Period is 229, the maximum total amount that could be disbursed to any single Class Member is $0.49 per week * 229 weeks = $112.21. These calculations are based on 229 total calendar weeks from April 8, 2007 (the start of the Class Period) through September 1, 2011.

Moreover, in this particular case, Plaintiff faced significant risks at the class certification stage as a result of three present factors: (1) the fact that numerous Class Members had in fact submitted reimbursement requests in accordance with Defendant's policies and were reimbursed accordingly, (2) the fact that Store Managers may have had interests adverse to other Class Members because, according to Defendant, they were responsible for ensuring that Assistant Managers were reimbursed for business-related expenses, (3) the issue of whether a strict liability or "knew or should have known" standard would apply to Plaintiff's §2802 claims, which would determine whether or not Defendant's constructive knowledge that Class Members were incurring bank-related expenses was sufficient.

**B. Settlement Was the Product of Informed, Non-Collusive Negotiations**

The Settlement Agreement is the product of adversarial litigation between the parties.[19] Both parties are represented by independent counsel with considerable experience in litigating complex wage and hour class actions.[20] Counsel for both parties conducted significant informal discovery and undertook thorough and factual analyses prior to the commencement of settlement negotiations.[21] After a full day of negotiation, the parties reached an agreement, which is memorialized as the Settlement Agreement, and which recognizes and reflects the inherent expense, delay and uncertainty that briefing a motion for class certification and eventually conducting a trial would necessarily entail.

**C. Settlement Agreement Contains No Obvious Deficiencies**

**1. The Settlement Agreement Does Not Grant Preferential Treatment to Segments of the Class**

Under the terms of the Settlement Agreement, after costs, fees and the

---

[19] Malk Decl. ¶¶ 20-33.

[20] Ackermann Decl. ¶¶ 28-29, 16, Exhibit B thereto; Malk Decl. ¶¶ 8-17, 30.

[21] *See*, Section II, *supra.*

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

1   enhancement award have been paid, each Claimant will receive a proportionate share of

2   the net settlement fund based on the number of weeks worked during the Class Period.

3   This methodology was adopted to reduce potential inequities between Participating

4   Class Members and to optimize the claim amount for each Claimant. Because each

5   Claimant's share of the net settlement fund is based on a formula that includes the

6   "weeks worked" specific to each member, no segment of the settlement class is given

7   undue preferential treatment at the expense of others. As such, the Settlement Agreement

8   contains a rational distribution mechanism and avoids any improper, preferential

9   treatment to any part of the Settlement Class.

10   **2.   The Settlement Agreement Does Not Grant Unduly Preferential Treatment to**
       **the Class Representative**

11

12   Likewise, the enhancement award contemplated by the Settlement Agreement, if

13   approved by this Court, would not constitute unduly preferential treatment in favor of

14   Plaintiff. In order to determine the propriety of enhancement awards, a district court

15   should consider the actions protecting class interests, the benefit provided to the class

16   based on those actions, and the amount of time and effort expended by the Plaintiff.

17   *Staton v. Boeing Co.,* 327 F.3d 938, 976-77 (9th Cir. 1993).

18   Here, Plaintiff provided significant assistance to Class Counsel during this case.

19   Specifically, Richard Nelson undertook lengthy interviews with counsel and carefully

20   considered, evaluated and approved the terms of the Settlement Agreement on behalf of

21   the Class. These efforts were instrumental in securing the favorable terms of the

22   Settlement Agreement, which will provide monetary compensation to a Class of

23   approximately 3,500 current and former employees of Defendant. Moreover, Plaintiff is

24   also generally releasing all claims, thereby providing a more robust release than that of

25   the Class.[22] In light of these efforts, the proposed Enhancement Award of $2,500 to

26

27   ――――――――――――――――――
     [22] *See,* Settlement Agreement ¶19.
28

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

Plaintiff Richard Nelson is reasonable and justifies preliminary approval.[23]

### 3. The Attorneys' Fees Under the Settlement Agreement Are Reasonable

The proposed attorneys' fees should be preliminarily approved by this Court because they are reasonable and fair. In cases that involve common funds, a court has discretion to award attorneys' fees as a percentage of the settlement. *See, Paul, Johnson, et al. v. Graulty,* 886 F.2d 268 (9th Cir. 1989). The court may consider: (1) whether counsel obtained excellent results for its client, (2) the risk involved in the representation, and (3) fees awarded in similar cases. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048-50 (9th Cir. 2003). As a cross-check, the court may examine Plaintiff's Counsel's lodestar. *Id.* at 1047.[24]

---

[23] *See, e.g. Bond v. Ferguson Enterprises, Inc.*, Final Approval Order, Slip Copy, 2011 WL 2648879, E.D.Cal., June 30, 2011 (No. 1:09-CV-1662-OWW-MJS) (approving incentive payments of $11,250 to each of the two named plaintiffs); *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 491-92 (E.D.Cal. 2010) (approving incentive payments of $5,000 to each of the named plaintiffs); *Romero v. Producers Dairy Foods, Inc.,* 2007 WL 3492841, *4 (E.D.Cal.) (approving incentive payments of $4,000 and $3,000 to the two named plaintiffs and $7,400 among class members deposed).

[24] To date, Plaintiff's Counsel have together expended 135.4 total hours in this litigation, for a total current lodestar of $43,480, as set forth in the following table. Plaintiff's Counsel anticipates performing an additional 30 hours of work through final approval, which will likely bring our total lodestar to approximately $52,000.

| Name | Hours | Hourly Rate | Total Lodestar |
|---|---|---|---|
| Craig J. Ackermann, Esq. | 15.5 | $550 | $8,525 |
| Tatiana Hernandez, Esq. | 17.6 | $350 | $6,160 |
| Devin Coyle, Esq. | 55.8 | $300 | $16,740 |
| Rosie Salinas | 4.5 | $150 | $675 |
| Michael Malk, Esq. | 16.0 | $500 | $8,000 |
| Linda Seiger | 2.6 | $175 | $455 |
| David Shapiro | 23.4 | $125 | $2,925 |
| **Total Current Lodestar** | **135.4** | | **$43,480** |

If the Court desires detailed time records, Plaintiff's Counsel is happy to produce them in camera.  However, detailed time records are not required for lodestar calculations. *Wershba v. Apple Computers Inc.*, 91 Cal.App.4th 224, 255 (2001).

Here, Plaintiff's Counsel achieved a good result for the Settlement Class. As stated above, Plaintiff's Counsel secured an agreement whose MSV is 40% of the revised maximum value of the Released Claims and entitles Participating Class Members to awards averaging approximately $33 to $44 and a maximum amount of approximately $112 for Class Members who worked throughout the entire Class Period.[25] These results are consistent with other class action settlements involving §2802 claims approved by other federal courts in California. *See, e.g. RadioShack; Starbucks.* Underscoring the benefit conferred upon the Settlement Class is the fact that litigating wage and hour class actions is inherently risky.[26] Importantly, while Plaintiff's retainer agreement with Plaintiff's Counsel stipulates to attorneys' fees of up to 33%, Plaintiff's Counsel are only requesting 25% of the Maximum Settlement Value.[27]

Furthermore, the requested attorneys' fees amounting to 25% of the MSV are

---

[25] To put this amount in perspective, under the settlement, class members will secure approximately 31% of the total amount they are potentially owed. To wit, if an assistant manager made 2 trips to the bank per week, on average - with other assistant managers making the other runs - she would make approximately 100 roundtrips per year. As reported by Defendant, and corroborated by Plaintiff's counsel, the average roundtrip to the local bank was approximately 1.6 miles. At 160 miles per year, and approximately $0.50 per mile, the assistant manager would be owed approximately $80 per year. The Class Period is approximately 4.5 years, so the maximum damages for a class member who worked throughout the Class Period would be $360. Under the settlement, assistant managers and store managers have the right to claim a maximum of approximately $112, or 31% of the total amount they are potentially owed.

[26] *See,* Section IV(A), *supra.*

[27] The requested fees of 25% of the Settlement Fund, after costs, is consistent with the benchmark set by the Ninth Circuit when using a percentage of the common fund method. *See, Hanlon*, at 1029; *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990). Moreover, the fees requested here are consistent with, or less than, the awards that Plaintiff's Counsel has obtained in similar class actions. *See,* Ackermann Decl. ¶¶ 38-39. Plaintiff's Counsel intends to file and fully brief a motion for attorneys' fees prior to the final approval hearing.

consistent with the fees awarded by Judge England in *Starbucks*,[28] and less than the fee

awards granted by this and other courts in similar cases.[29] *See, Bond v. Ferguson*

*Enterprises, Inc.*, Final Approval Order, Slip Copy, 2011 WL 2648879, E.D.Cal., June

30, 2011 (No. 1:09-CV-1662-OWW-MJS) (awarding 30% in attorneys' fees in a wage

and hour class action); *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 491-92

(E.D.Cal. 2010) (citing five recent wage and hour class actions where federal district

courts approved attorneys' fee awards ranging from 30% to 33%); *Stuart v. RadioShack*

*Corp.,* 2010 WL 3155645, No. C-07-4499 EMC (N.D. Cal. 2010) (approving fee award

of 1/3 of the common fund and noting that attorneys fees of 1/3 were "well within the

range of percentages which courts have upheld as reasonable in other class action

lawsuits."); *Singer v. Becton Dickinson and Co.,* 2010 WL 2196104, *8 (S.D.Cal.)

(approving fee award of 33.33% of the common fund; award was similar to awards in

three other wage and hour class action cases where fees ranged from 30% to 40%);

*Martin v. FedEx Ground Package System, Inc.,* 2008 WL 5478576, *8 (N.D.Cal.)

(approving fees of 1/3 of common fund in wage and hour class action); *Knight v. Red*

*Door Salons, Inc.,* 2009 WL 248367, *5 (N.D.Cal.) (awarding 30% in attorneys' fees in

a wage and hour class action with a $500,000 settlement fund); *Romero v. Producers*

*Dairy Foods, Inc.,* 2007 WL 3492841, *4 (E.D.Cal.) (awarding fees of 1/3 of common

fund in a wage and hour class action, noting: "Fee awards in class actions average

around one-third of the recovery.")

//

//

//

---

[28] *Lewis v. Starbucks Corp.,* Case No. 2:07-cv-00490, Docket #57 (E.D.Cal. 2008) (awarding fees of 25% of common fund).

[29] Where, as here, the common fund is less than $10 million, class action commentators have noted that courts typically award 30-50% of the fund as attorneys' fees. *See,* Rubenstein, Conte and Newberg, *Newberg on Class Actions* at §14:6.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

1  **V. <u>APPROVAL OF CLASS NOTICE AND RELATED FORMS</u>**

2  **A. Administration of Notice, Objections and Claims**

3      The parties have selected Simpluris, an experienced claims administrator, to serve

4  as the Settlement Administrator.[30] Within thirty (30) days of preliminary approval of the

5  Settlement, Defendant will provide Simpluris with the full name, last known home

6  address, last known telephone number, the last four digits of the Social Security number,

7  dates of employment as an Assistant Manager or Store Manager in California during the

8  Class Period and the total weeks worked during the Class Period for each Class Member.

9  (the "Class List"). Within fifteen (15) days of receiving the Class List from Defendant,

10  Simpluris will mail all Class Members the Class Notice and Claim Form.[31] The Claim

11  Form provides an estimate of the individual Class Member's share of the settlement.[32]

12  Class members have forty-five (45) days from the notice mailing to submit a claim. All

13  Claim Forms submitted to Simpluris by the deadline shall be deemed filed in this

14  Action. Those Class Members who receive the Notice Packet pursuant to a re-mailing

15  because of a change of address will have forty-five (45) days from the date the Notice

16  Packet is mailed to the updated address.

17      The notice informs each Class Member of his or her right to object to the

18  settlement. Class Members who wish to object to the Settlement must object in writing,

19  stating the basis for the objection, file the objection with the Claims Administrator and

20  the parties' counsel and be postmarked no later than forty-five (45) days after the notice

21  mailing. Otherwise, Class Members shall be deemed to have waived any objections and

22  shall be foreclosed from making any objection (whether by appeal or otherwise) to the

23  Settlement.

24

25  [30] Malk Decl. ¶35.

26  [31] Attached respectively as Exhibits A and B to the Settlement Agreement.

27  [32] The notice explains that the final amount may change depending on the Court's final

28  approval order.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

**B.  The Court Shall Direct Distribution of the Notice of Settlement**

This Court should order distribution of the proposed Class Notice in the manner described in the Settlement Agreement. Fed. R. Civ. P. 23(e)(1)(B) requires the Court to direct notice to class members "in a reasonable manner." *See also, Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 173 (1974). Notice by mail provides adequate "individual notice to all members." *Id.* Where the names and addresses of the class members are ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id.* at 175. If notice by mail is ordered and addresses are available, as here, publication of notice is not necessary and is, in fact, "duplicative and serve[s] no purpose." *U.S. v. Truckee-Carson Irrigation Dist.,* 71 F.R.D. 10, 18 (D.Nev. 1975).

Here, the Class Members' names and last known addresses are ascertainable. The Class Members are current of former employees of Defendant, whose names, last known addresses, and social security numbers Defendant maintains in its personnel files. Although some class members' addresses may have changed, their social security numbers have not. Per the Settlement Agreement, the Claims Administrator will use social security information to locate any class member whose Notice is returned as undeliverable through a skip trace. The proposed Class Notice fairly and accurately summarizes the terms of the Settlement Agreement and the Class Members' rights (including procedures for making claims, requesting exclusion from, or objecting to, the Settlement Agreement). Under these circumstances, Plaintiff submits that notice by mail is sufficient to comply with the requirements of Rule 23 and due process, and that notice as proposed should be approved.

**C.  The Proposed Class Notice and Claims Process Are Appropriate**

Fed. R. Civ. P. 23(c)(2)(B) provides that the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: (1) The nature of the action; (2) the definition of the class certified; (3) the class claims, issues or defenses; (4) that a class

member may enter an appearance through counsel if the member so desires; (5) that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and (6) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The content of the proposed Class Notice fully complies with due process and Fed. R. Civ. P. 23. The Class Notice provides specifics regarding the date, time, and place of the Final Approval Hearing, and informs Class Members that they may enter an appearance through counsel. The Notice informs Class Members how to exercise their rights and make informed decisions regarding the proposed Settlement Agreement, and tells them that if they do not opt out, the judgment will be binding upon them. The Notice informs the Settlement Class about the application of Plaintiff's Counsel for reimbursement of costs and attorneys' fees from the Maximum Settlement Value, as well as the amount sought. The Notice describes the terms of the Settlement Agreement, informs Class Members how individual recoveries will be determined, and provides an estimated settlement amount for each Class Member.

The detailed information in the Proposed Notice is more than adequate to put Class Members on notice of the Settlement Agreement. *See, e.g., Mendoza v. Tucson School Dist. No. 1,* 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the… settlement" satisfies standards).

**D. The Court Should Set A Final Approval Hearing**

Finally, this Court should set a hearing for final approval of the Settlement Agreement on a date to be scheduled no earlier than forty-five (45) days after the notice mailing, i.e., the date by which Class Members must file objections, if any. In order to have time for the notice dissemination process to be completed, for the parties to review any objections and prepare responses, and for Plaintiff to prepare papers supporting final approval, Plaintiff proposes that the Court should set the final approval hearing on or after April 4, 2011, and allow the parties to file any papers for the hearing twenty-one (21) days before the hearing. These dates would allow a reasonable period for mailed

1 | notice and for Class Members to submit claims, object to or opt-out of the settlement,

2 | but would not unduly delay the Class Members' receipt of individual settlement awards.

3 | **VI.     CONCLUSION**

4 | For the reasons discussed above, Plaintiff requests that the Court enter an order of

5 | preliminary approval of the class action settlement, approve the form of the proposed

6 | notice, and approve the proposed schedule, including setting a date for a final approval

7 | hearing.

8 |

9 | Dated: November 4, 2011                    Respectfully submitted,

10 |                                                           MICHAEL MALK, ESQ. APC
                                                              ACKERMANN & TILAJEF, P.C.

11 |

12 |                                             By:   _____

13 |                                                     Craig Ackermann, Esq.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL